UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>STEVEN BOWMAN,<br><br>    Defendant. | Case No. 1:19-cr-000158-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Defendant Steven Bowman's Motion for Clarification. Dkt. 491. The Government did not respond to the Motion.[1] Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[2] Upon review, the Court provides the following clarification.

# II. BACKGROUND

## A. FACTUAL

This case arises from Steven Bowman's membership and participation in an Idaho

---

[1] This is not a criticism, simply a fact. The Court is aware from the current motion that the Government offered its position on the matter to Defense counsel and noted it would respond formally if the Court desired. Dkt. 491, at 6.

[2] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 1

prison gang known as the Aryan Knights. On May 14, 2019, Bowman, along with eight co-defendants, was charged with a single count of Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d). Dkt. 1, at 2. Bowman and an additional defendant, Mark Woodland, were also charged with Attempted Murder and Assault With a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2. *Id*. at 18.

On August 11, 2022, Bowman entered a plea of guilty to Count One of the Indictment. Dkt. 385. On May 9, 2023, the Court sentenced Bowman to a total term of 78 months imprisonment. Dkts. 461–463. To date, all Defendants except one—James Ramsey—have pleaded guilty and been sentenced.

During the pendency of this case prior to sentencing, Bowman was housed at FDC SeaTac, and was later moved to the Idaho Department of Corrections - IMSI where he was concurrently serving a state sentence. In late October 2022, post-sentencing, Bowman was moved—apparently pursuant to some type of interstate compact between the States of Idaho and Florida—and is now serving his state sentence at Santa Rosa Correctional Institution in Milton, Florida.

B. **PRODEDURAL**

As part of the discovery process in this case, the Court entered various protective orders. Of note, a Protective Order applying to Bowman was entered on July 23, 2019 ("Protective Order"). Dkt. 101. The Protective Order outlined that: (1) the Government would provide all discovery to Bowman's Counsel, (2) Bowman's counsel was prohibited from copying and/or disseminating any discovery directly to Bowman (or anyone else),

MEMORANDUM DECISION AND ORDER - 2

and (3) Bowman could review the discovery but could "not maintain possession of the discovery." *Id*. The reason for the strictness of the Protective Order was that this case revolves around a multi-layered gang conspiracy where extortion and violence are present.[3] The Government's concern with individual defendants having access to discovery was that such could "create the potential for witness intimidation and retaliation." Dkt. 97, at 2.

Later that year, the Court granted motions from various Defendants to amend the Protective Order. Dkt. 150. As part of the Amended Protective Order, the Court allowed Defendants, including Bowman, an opportunity to view electronic copies of the discovery within the IDOC prison facility under the supervision of prison officials. *Id*. All other parameters of the prior Protective Order remained in place. And, importantly, it was clear that Defendants would "not be allowed to print out copies of the discovery." *Id*. at 2.

After Bowman was transferred to the Correctional Institution in Florida, the IDOC sent all his discovery materials to Bowman's counsel. Defense Counsel represents that the IDOC has stated it will not act as a custodian for these materials. Dkt. 491, at 4.

In November and December 2023, Bowman requested that his counsel mail him all discovery (that the IDOC had turned over). Apparently, Bowman would like to file post-conviction motions and a complaint for ineffective assistance of counsel. Dkt. 491, at 5. Defense counsel was hesitant to send anything to Bowman in light of the existing protective orders *and* the fact that the case is still technically ongoing. They filed the instant motion on Bowman's behalf, seeking clarification of the following issues:

---

[3] Additionally, the sheer volume of the discovery in this case (upwards of 13 terabytes of data) dictated that attorneys be present when defendants were reviewing discovery so as to keep matters organized.

MEMORANDUM DECISION AND ORDER - 3

1. Whether the Protective Order or Amended Protective Order still applies, post-sentencing?

2. If the Amended Protective Order applies, who is the custodian of Mr. Bowman's discovery materials? If IDOC ultimately maintains jurisdiction over an interstate compact, do the materials need to be returned to the IDOC for forwarding to Florida, and how will the Protective Order or Amended Protective Order be enforced in Florida moving forward?

3. If neither the Protective Order or Amended Protective Order applies, what rights does Mr. Bowman have to review discovery in this case post-conviction? Dkt. 491, at 7.

The Court will address each question below after outlining some initial thoughts.

### III. DISCUSSION

It is well-settled that "there is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rule 16 of the Federal Rules of Criminal Procedure outline the discovery parameters that must be followed in criminal cases and the duties and obligations the parties—mostly the Government—must follow. Notably, Rule 16 specifically contemplates protective orders and gives the Court discretion to "deny, restrict, or defer discovery or inspection" of any discovery. Fed. R. Crim. P. 16(d)(1).

As noted, this case is ongoing. Defendant Ramsey is preparing for trial. Thus, as a threshold matter, the Court finds it inappropriate to allow Bowman (or any other Defendant) access to discovery materials outside the parameters of the prior two protective

orders until the conclusion of Ramsey's case. The considerations of safety and witness intimidation are still present.[4]

More to Bowman's point, however, is the question of whether the protective orders apply *post-sentencing*. Upon review, the Court does find it appropriate to extend the parameters of the protective orders indefinitely. A RICO case such as this—where witness intimidation and violence have already occurred—deserves special considerations. And it would be counter-intuitive to place parameters on discovery for the purpose of ensuring safety, but then turn around and give Defendants unfettered access to that discovery simply because the case had concluded, without any indication that the safety concerns had abated.[5] In short, the Court finds the protective orders in this case should continue in effect into the future.[6]

The Court will jump to Counsel's third question as it relates to the current discussion. Even if the Court extinguished the existing protective orders, that would not give Bowman an automatic right to discovery. Similar to the concept that there is no general constitutional right to discovery in a criminal case, "there is no general constitutional right

---

[4] As will be explained, the Court is not implying such considerations will evaporate once Ramsey's case concludes. They will likely continue to apply. But the overall question is simpler while the case is ongoing.

[5] Additionally: "A criminal defendant is not entitled to know everything that a Government investigation [reveals]," particularly one that is "far-reaching" and "unearthed" substantial information "not used against [the defendant] at trial." *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1144 (2d Cir. 1978). None of the Defendants went to trial in this case (thus far). As mentioned, the volume of discovery here is massive and, presumably, some of the discovery applies to certain Defendants while other discovery does not. These additional considerations weigh in favor of extending the Protective Order.

[6] This procedure is very common in civil cases. Parties enter into protective orders during discovery so that information can be securely exchanged. And even when the underlying litigation has come to an end, the parties fully expect those parameters to continue so as to avoid any damage that may occur as the result of the improper disclosure of sensitive information. *See* Fed. R. Civ. P. 26(c).

of access to documents that a criminal defendant deems material to a past criminal case or potential collateral postconviction proceedings." *United States v. Castillo*, 730 F. App'x 892 (11th Cir. 2018). *See also Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72–74 (2009) (holding defendants do not have a "freestanding right" to post-conviction discovery); *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). In other words, Bowman (and others) do not have an automatic right to discovery for post-conviction motions.

Now, the Court is cognizant of the fact that it will likely be difficult for Bowman to file post-sentencing motions without access to discovery. However, that is the nature of the situation (and one Bowman shares with all criminal defendants). Moreover, the question need not be decided at this time. In the present Motion, Bowman's counsel explains that Bowman has relayed his desire to have discovery so that he can file a bar complaint against his attorneys (for failing to send him discovery) and to "file motions and to prepare a complaint for ineffective assistance of counsel." Dkt. 491, at 5.

If Bowman plans to file a direct appeal of his sentence it will be difficult for him to make such an argument because: 1) the time to do so has long passed, and 2) he affirmatively waived his right to appeal. Dkt. 375, at 10. Thus, the Court cannot see how discovery would be necessary to Bowman's appeal, if any. If Bowman seeks to file a petition under 28 U.S.C. § 2255, he may request discovery as part of that process.[7] The

---

[7] In a § 2255 proceeding, "[a] judge may, for good cause, authorize a party to conduct discovery . . . . If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to

MEMORANDUM DECISION AND ORDER - 6

Court can then, pursuant to the Rules Governing 2255 Petitions, decide whether discovery is appropriate. But again, the Court is not able to undertake such an inquiry at this time.

Finally, the Court returns to Bowman's second question regarding the proper custodian of his discovery at the current juncture. The Protective Order in this case indicated that "the discovery will remain in Defense Counsel's possession . . . ." Dkt. 101, at 1. Counsel, therefore, is the custodian of the discovery. While IDOC was coordinating the *review* of discovery in this case, it was not truly the custodian of the materials themselves. Counsel for the respective defendants maintained that role. Thus, the materials should remain in the custody of Bowman's counsel.

One thing that makes this situation particularly thorny is the fact that Bowman now resides in a facility on the other side of the United States. If he was still in an IDOC facility, the Court could—if good cause was shown—conceivably come up with a relatively straightforward plan to allow him to review discovery. But trying to do so from across the country presents numerous challenges. Setting aside the fact that data could be lost or stolen in trying to transmit it to Florida, it is not reasonable to expect personnel at the IDOC to coordinate with personnel in Florida to try and enforce the very specific Protective Order currently in place and/or to require Florida personal to communicate with the Court to ensure compliance.

Simply put, the Court sees too many risks involved in such an endeavor. And to

---

have counsel appointed under 18 U.S.C. § 3006A." Section 2255 R. 6(a). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908–09 (cleaned up).

MEMORANDUM DECISION AND ORDER - 7

reiterate, Bowman has not shown he is entitled to discovery at this stage of the proceedings in the first place. *See, e.g., United States v. Chapa*, 2017 WL 896895, at *2 (N.D. Tex. Mar. 7, 2017) (explaining that an individual's "right to discovery is constrained [] by the nature of the proceedings in which he seeks to use that discovery" and that discovery is not mandated in post-conviction proceedings). If the Court determines Bowman is entitled to discovery at some point in the future, it will then take up the question of *how* to accomplish that task; whether by bringing Bowman back to Idaho or by some other means.

## IV. CONCLUSION

Question 1: Do the protective orders still apply, post-sentencing?

Answer: Yes, both the original Protective Order (Dkt. 101) and the Amended Protective Order (Dkt. 150) remain in effect because: 1) the case is ongoing, and 2) special conditions warrant the extension of the protective orders indefinitely (even once Ramsey's case concludes).

Question 2: Who is the custodian of the discovery?

Answer: As outlined in the Protective Order, Defense Counsel is the custodian of the discovery in this case. And, in order to comply with the Protective Orders (and the instant order), Defense Counsel *shall not* turn discovery over to any defendant.

Question 3: What rights does Mr. Bowman have to review discovery in this case post-conviction?

Answer: Pursuant to applicable caselaw, Bowman does not have a freestanding constitutional right to discovery for post-conviction proceedings unless and until he shows good cause why the same should be granted. The determination of whether Bowman has

MEMORANDUM DECISION AND ORDER - 8

good cause to review discovery is not before the Court today.

V. ORDER

The Court **HEREBY ORDERS**:

1. Bowman's Motion for Clarification (Dkt. 491) is **GRANTED** to the extent the Court has outlined how the Protective Orders will apply and be interpreted moving forward.

DATED: February 22, 2024

David C. Nye
Chief U.S. District Court Judge